E-FILED
Wednesday, 05 February, 2020 10:10:52 AM
Clerk, U.S. District Court, ILCD

UNITED STATES OF AMERICA
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DENNIS WEST, <br><br> Defendant. | No. 19-20024-MMM-EIL |

**Defendant's Memorandum of Law in Support of Sentencing Commentary**

Defendant Dennis West, through his attorney Assistant Federal Public Defender Johanes Maliza, hereby submits his this Memorandum of Law in Support of his Commentary on Sentencing:

**I. A Sentence of 180 Months Is Appropriate in this Case**

180 months of incarceration for Mr. West is sufficient, but no greater than necessary to meet the sentencing aims of 18 U.S.C. § 3553(a).

A 180-month sentence is appropriate for several reasons. First, Mr. West's history and characteristics suggest that he is capable of rehabilitation, and that his overall character is that of a contributing member of society. Second, the advisory guidelines from U.S.S.G. § 2G2.1, as applied to Mr. West's case, are more harsh than necessary to meet the sentencing goals of § 3553(a)(2)(A-D). The guidelines are entitled to less deference than normal, because the Sentencing Commission did not create them using its traditional empirical, experience-based approach. Last, Mr. West's primary

1

punishment in this case will extend far beyond the period of incarceration, so imposing more than 180 months would not serve the sentencing factors in § 3553(a).

### A. Mr. West's History and Characteristics

Mr. West accepts responsibility for his offenses, and does not dispute the severity of his conduct. He has made poor decisions, and engaged in inappropriate relationships with teenagers. A 180-month sentence sufficiently punishes those poor decisions and inappropriate relationships. A guidelines sentence – between 27 and 34 years – is greater than necessary to serve the sentencing goals of 18 U.S.C. § 3553(a)(2)(A-D). His history and characteristics demonstrate that he can be a worthwhile individual, and that he can be rehabilitated. Sending him to prison for most of the rest of his life is not necessary.

As the character letters attest, Mr. West has been a contributing member of society. He has helped out neighbors in need, contributed to his family, and generally acted in a way that one would expect from a small town resident. In many ways, he is an asset to his community. He is certainly an asset to his elderly father, whom Mr. West supports with homecare needs.

These letters describe a person with many redeeming qualities. That term – redeeming – is important. It recognizes that a person is not definitively the sum of their worst conduct. When Mr. West leaves prison, he will seek to redeem himself in the eyes of his neighbors and community, and there is every reason to expect that he will succeed. The letters demonstrate that he knows how to be a good person, and he will strive to live up to the standard that those nearest him expect.

Redemption for Mr. West has already begun. He feels remorse for his actions, and deep reflection has helped him realize how his actions affected the victims in this case. Even after realizing that the mandatory minimum would (almost certainly) not be affected by his cooperation, Mr. West agreed to speak with investigators when told that his proffer would be used to help a victim begin her recovery. He wants to make amends, and be a better person.

A 180 month sentence recognizes the capacity for redemption, while sufficiently sanctioning his conduct.

### B. Family and Work History

There is more to Mr. West than the letters, though. Though his family members are supportive now, family has not always been a source of positivity. As a child, Mr. West's step mother and other caregivers were abusive towards him and his siblings. It created a very negative environment, from which some of Mr. West's siblings have also been involved in the criminal justice system. Despite the insecurity of his childhood home, Mr. West never turned to drug use or alcohol as so many do.

Not only that, he has been able to succeed professionally. He was a truck driver for many years, making a good living, and working consistently. Reflecting his work ethic, Mr. West will ask the Court to recommend that he serve his time in FMC Lexington or FCI Marianna. He has chosen these locations because he feels they offer the best opportunity for work programs, including UNICOR.

The will and ability to maintain a stable profession is an important ingredient in success after release from incarceration. Indeed, it is one of the reasons that

employment is included as a term of supervised release so often. By demonstrating that he can and will be successful in work, Mr. West has shown that he will be able to rejoin society once his sentence is over.

His prospects for success demonstrate that a sentence over 180 months is unnecessary and probably counter-productive. If he gets out after 15 years, Mr. West will be able to rejoin his career, and hopefully be a stable contributor to his family and community. After 20, 25, 30 years, that reentry will be less likely, and less successful.

Mr. West's conduct – both good and bad – should be viewed in the context of a person who has overcome challenges, but also found success in his life. He can be a contributing member of society, and the sentence should allow him to do so before it is too late.

**II. U.S.S.G. § 2G2.2 Is Not Entitled to Normal Deference**

A technical application of the guidelines to his case yields an advisory range of 324-405 months-. PSR ¶ 121. But a more nuanced assessment recognizes that the guidelines fail to differentiate between offenders with similar convictions. Relative to most offenders who are sentenced under U.S.S.G. § 2G2.1, Mr. West merits a shorter sentence.

One reason the guidelines are a poor fit for this and other U.S.S.G. § 2G2.1 cases – and thus advise a sentence that is greater than necessary to meet the sentencing goals of 18 U.S.C. § 3553(a) – is because they were not made from an empirical or experienced process. *United States v. Baird*, 580 F. Supp. 2d 889, 894 (D. Neb. 2008). Rather, they were created in response to statutory changes. The Seventh Circuit has signaled

4

agreement that the Sentencing Commission did not employ empirical methods in generating guidelines for sex offense guidelines. *See United States v. Huffstatler*, 571 F.3d 620, 623 (7th Cir. 2009)(discussing application of U.S.S.G. § 2G2.1). When the Sentencing Commission promulgates guidelines in response to Congressional directives, instead of using empirical data and expertise, the guidelines receive less deference than normal. *Baird*, 580 F. Supp. at 895 (giving U.S.S.G. § 2G2.2 "less deference than it would to empirically-grounded guidelines.").

Another reason is that the guidelines at U.S.S.G. § 2G2.1 do not differentiate between Mr. West's conduct, and anybody else who is convicted of child exploitation. There is a relevant difference between Mr. West's conduct, and someone who creates, then disseminates, illicit photographs of toddlers. Neither is acceptable by any means, but the conduct is not identical. The guidelines make little acknowledgement for that difference, though. Mr. West submits that a 180-month sentence would sufficiently reflect the severity of his conduct, while acknowledging that the guidelines cover too-broad a swath of conduct.

Federal sentencing courts have taken notice of U.S.S.G. § 2G2.1's harshness, and begun to act. In 2018, 455 federal offenders faced sentencing with § 2G2.1 as the primary guideline. Of those offenders, 53% received a downward variance (excluding those who received downward departures). *See* 2018 U.S. Sentencing Commission Sourcebook, Table 32, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/Table32.pdf, last accessed February 4, 2020. Mr. West,

5

especially in light of the mitigating factors from his history and characteristics, should be in the 53% who gets a downward variance.

### III. Mr. West's Punishment is Far Beyond the Prison Sentence

Mr. West will face a severe custodial sentence, but the primary punishment in this case is the inability to return to any of his previous life. When he gets out, Mr. West is rightfully afraid that his father (in ill health) will not be alive. His family, as discussed above, has always been somewhat tenuous. The support he has now might not last for 15 years, much less longer. And while he hopes to re-establish a relationship with his fiancée, step daughter, and daughter, there is no guarantee he will be able to do so once out.

Mr. West will be followed by this conviction forever. He will be unable to secure many jobs, and will be unable to live in certain places. So he will face challenges as he tries to rebuild his new life. If he begins it at age 60, or older, as the guidelines counsel, his chances of success are severely diminished. If he can get out in 15 years, he will at least have a shot at making a new life in the world.

### IV. Conclusion

The sentencing guidelines in this case are more harsh than necessary to meet § 3553(a)'s goals. Under § 3553(a)(2)(A), a 180 month sentence will appropriately reflect the severity of the crime, while allowing Mr. West a chance to get out in a reasonable time. The severity of his conduct is brought home – and has been since the indictment – by the 180 month minimum. It will provide just deterrence, and protect the public from Mr. West going forward, satisfying §§ 3553(a)(2)(B-C). His strong work history and

6

ability to reenter society should be put to use when he get out.  The Court should impose a 180 month sentence on Mr. West.

                                                        Respectfully submitted,

February 5, 2020                  DENNIS WEST, Defendant,

                                                        THOMAS PATTON, Federal Public Defender

                                                        By: s/ Johanes Maliza
                                                        Johanes C. Maliza
                                                        Office of the Federal Public Defender
                                                        600 E. Adams St., Second Floor
                                                        Springfield, IL 62701
                                                        Telephone:   217-492-5070
                                                       Facsimile:    217-492-5077
                                                      E-mail:       johanes_maliza@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

s/ Johanes C. Maliza